UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:16-cr-00059-GZS |
| DOUGLAS BLODGETT, | ) |
| | ) |
| Defendant. | ) |

ORDER ON MOTION FOR A REDUCTION IN SENTENCE

Before the Court is Defendant Douglas Blodgett's Motion Pursuant to 18 U.S.C. § 3582(c)(1)(A) for a Reduction in Sentence (ECF No. 58). Having reviewed Defendant's Motion, the Government's Response (ECF No. 62), and the remaining docket, the Court DENIES the Motion.[1]

I. LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A) "authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction'" and the prisoner seeking the reduction has exhausted his administrative remedies. United States v. Ruvalcaba, 26 F.4th 14, 18 (1st Cir. 2022). To grant a motion under section 3582(c)(1)(A), "the district court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence

---

[1] Defendant appended to his Motion a "petition for legal counsel" pursuant to 18 U.S.C. § 3006A. Defendant "has no constitutional or statutory right to appointed counsel in connection with his motion for compassionate release." See United States v. Fleming, 5 F.4th 189, 192-93 (2d Cir. 2021) ("[A] defendant has no right to the assistance of counsel in filing a motion for compassionate release or appealing from the denial of such a motion . . . ."); see also United States v. Manso-Zamora, 991 F.3d 694, 696 (6th Cir. 2021) ("[E]very federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings."). The Court DENIES Defendant's request to appoint counsel with respect to the instant Motion.

reduction and that 'such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.'" Id. at 18-19 (citations omitted). With respect to a prisoner-initiated motion under section 3582(c)(1)(A), however, there is no applicable policy statement that is binding on the court's review of such motion. See id. at 23.[2] As such, when reviewing a prisoner-initiated motion for compassionate release, "district courts enjoy broad discretion[] and may conduct a holistic review to determine whether the individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release." United States v. Trenkler, 47 F.4th 42, 47 (1st Cir. 2022); see Ruvalcaba, 26 F.4th at 18-19 ("[A] district court, reviewing a prisoner-initiated motion for compassionate release . . . , may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief.").

If a court determines that the defendant's motion has presented extraordinary and compelling reasons to warrant a sentencing reduction, it must then consider any applicable factors under 18 U.S.C. § 3553(a) "and 'determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case.'" Ruvalcaba, 26 F.4th at 19 (quoting United States v. Saccoccia, 10 F.4th 1, 4 (1st Cir. 2021)); see, e.g., United States v. Almeida, No. 2:11-cr-00127-DBH, 2021 WL 22332, at *2 (D. Me. Jan. 4, 2021) (denying compassionate release based on § 3553(a) factors after finding that defendant's medical conditions were extraordinary and compelling in light of the coronavirus pandemic).

---

[2] U.S.S.G. § 1B1.13, the Sentencing Commission's policy statement applicable to a compassionate-release motion brought by the BOP, "nonetheless may serve as a non-binding reference" for a court's review of a compassionate-release motion brought by a prisoner. See Ruvalcaba, 26 F.4th at 23.

2

## II.     DISCUSSION

Defendant Douglas Blodgett, 52 years old, has served approximately 60 percent of his 120-month sentence imposed in December 2016 for accessing with intent to view child pornography. (ECF No. 58-3, PageID #s 207-08; ECF No. 62-1, PageID #s 229-30.)  He is serving his sentence at FCI Danbury and has a projected release date of March 19, 2025.  (ECF No. 58-3, PageID # 208; ECF No. 62-1, PageID #s 230, 242.)  The Bureau of Prisons ("BOP") has categorized him as a Physical Care Level 2 and Mental Health Care Level 1.  (ECF No. 62-4, PageID # 242.)  While FCI Danbury has no active COVID-19 cases at this time, it has reported one inmate death due to COVID-19 at its facility, and 376 of its staff members and 130 of its inmates have recovered from COVID-19 infections.  Additionally, 202 of its staff members and 973 of its inmates have been vaccinated.[3] Blodgett is among this group of vaccinated inmates, as he completed the two-dose COVID-19 Moderna Vaccine on March 24, 2021 and received a booster vaccine on December 2, 2021.  (ECF No. 58-1, PageID # 199.)[4]  He has also recovered from COVID-19, having contracted it in January 2022.  (Id., PageID # 197.)  Prior to filing the instant Motion, Defendant applied for compassionate release with BOP, which denied his application.  (ECF No. 58-2, PageID #s 202-03.)

The Court acknowledges that the ongoing COVID-19 pandemic is an extraordinary event that has been especially challenging for BOP and the inmates in its care.  However, it is against this backdrop that Defendant must show individualized extraordinary and compelling reasons why he should not be required to serve the remainder of his sentence.  In support of his request for compassionate release, Defendant asserts the following: (1) he suffers from hypertension,

---

[3] See COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last visited Oct. 13, 2022); FCI Danbury, https://www.bop.gov/locations/institutions/dan/ (last visited Oct. 13, 2022).

[4] The Court draws this information from the medical records provided by Defendant (ECF No. 58-1) and the Government (ECF Nos. 62-2, 62-3), which reflect his medical history and treatment during his incarceration at FCI Danbury.

hyperlipidemia, obesity, and sciatica, which are "more than potentially deadly as co-morbidities for COVID-19"; (2) his "father and godmother, two important figures in his stabilizing circle, are in states of declining health"; (3) he "has availed himself of a considerable range of academic and rehabilitative programs" during his incarceration but, due to the COVID-19 pandemic, "[n]o academic or vocational classes have been made available to him . . . beyond once-a-week (at best) [GED and ESL] courses" that "accept[] a limited number of applicants" and "are often cancelled at the last moment"; (4) "physical fitness is difficult in prison, especially during a lockdown" due to the pandemic; (5) "[b]eyond two incident reports, which were quickly resolved, [he] has maintained a clear disciplinary history since entering custody"; and, (6) "[u]pon release, [he] will make good use of the skills he has fostered in prison by securing legitimate, gainful employment." (ECF No. 58, PageID #s 152-54, 159.) Defendant also highlights the high transmissibility of COVID-19, particularly its variants, and that an individual's vaccination status does not necessarily protect that individual from contracting COVID-19. (See id., PageID #s 161-65.)

Additionally, Defendant maintains that FCI Danbury has displayed "shortcomings" with respect to its management of COVID-19 and that "these shortcomings put inmates, including [Defendant], at far greater risk of health complications and even death as a result of infection with the disease." (Id., PageID # 156.) More specifically, he asserts that FCI Danbury's "dormitory-style housing" has made social distancing at the facility "impossible" and that FCI Danbury's administration and staff have failed "to follow basic [Centers for Disease Control and Prevention] protocols and quarantine procedures." (Id., PageID # 157.) In support of his argument that FCI Danbury has failed to adequately manage the outbreak of COVID-19, he cites multiple courts and lawmakers that have acknowledged the facility's failures throughout the pandemic. (See id., PageID #s 157-60.) He also stresses that BOP improperly decided that his compassionate release

4

was not warranted on the basis that his medical ailments were sufficiently "managed,"[5] because (in his view) "[t]he issue is whether or not [his] underlying conditions put [him] at real risk of death or serious complications upon infection with COVID-19." (Id., PageID # 159.) In Defendant's view, the dangers that COVID-19 poses to those with "preexisting health conditions" (like Defendant), along with "the incompetence of [FCI Danbury's] staff and [its] physical layout," constitute unforeseen circumstances that qualify as extraordinary and compelling reasons for his release. (Id., PageID # 165.)

The Government concedes that "people who suffer from obesity and hypertension[] are at increased risk of severe illness from COVID-19" and therefore "in the context of the COVID-19 pandemic, obesity and heart disease normally presents an 'extraordinary and compelling' reason for release." (ECF No. 62, PageID # 221.) However, the Government maintains, because Defendant has "received both doses of the Moderna Vaccine, and the Booster," and has recovered from COVID-19 "with no complications or serious illness," "the combination of the COVID-19 pandemic and his underlying medical conditions no longer present an extraordinary and compelling reason warranting release." (Id.) As for Defendant's assertions regarding FCI Danbury's management of COVID-19, the Government responds that those "center around Danbury FCI in 2020 and beginning of 2021" rather than "recent conditions at Danbury." (Id., PageID # 225 n.9.)

As a preliminary matter, the Court notes that "not every complex of health concerns is sufficient to warrant compassionate release," a fact that "remains true even in the midst of the COVID-19 pandemic." Saccoccia, 10 F.4th at 5. Neither sciatica nor hyperlipidemia is

---

[5] BOP's denial of Defendant's application for compassionate release noted that his "medical needs are being managed at FCI Danbury" and his "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release." ECF No. 58-2, PageID # 202.

documented in Defendant's medical records provided to the Court. Moreover, the Centers for Disease Control and Prevention ("CDC") does not recognize either condition as increasing an individual's risk of becoming seriously ill from COVID-19. See Coronavirus Disease: People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sep. 2, 2022). The CDC does, however, recognize obesity and hypertension as potentially exacerbating conditions. (Id.)[6] The Court was aware at the time of Defendant's sentencing that he suffered from such conditions, as they were documented in the Presentence Investigation Report. (See PSR, ¶¶ 43-44.) Although the Court did not contemplate then the emergence of a pandemic that would pose additional threats to Defendant's health, his medical records do not show that his health has materially declined during his incarceration (due to the pandemic or otherwise). Furthermore, there is nothing in Defendant's records to indicate that his medical conditions are not, or cannot be, well managed within FCI Danbury going forward.

As previously noted, Defendant has been vaccinated and boosted against COVID-19. "While breakthrough infections have occurred in vaccinated people due to the Delta and Omicron variants[,] . . . the vaccine is still highly effective at preventing death and serious injury, even against the Delta and Omicron variants." United States v. Davidson, No. 1:15-cr-00288-RMB, 2022 WL 484829, at *3 (S.D.N.Y. Feb. 17, 2022) (cleaned up); see United States v. Robertson, No. 2:16-CR-00149-GZS, 2022 WL 597331, at *2 (D. Me. Feb. 28, 2022) ("[A]ll of the FDA-approved or authorized COVID-19 vaccines have been shown to provide substantial protection against COVID-19 hospitalization."). Indeed, Defendant recovered from contracting COVID-19

---

[6] The Court notes, however, that the CDC is more equivocal regarding hypertension, stating that hypertension is "possibly" a risk factor. See Coronavirus Disease: People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sep. 2, 2022).

in January 2022 without any serious complications. (See ECF No. 58-1, PageID # 197; ECF No. 58-2, PageID #s 201-02; ECF No. 62-3, PageID #s 238-41.)[7] The Court finds no cause to diverge from the numerous "courts [that have] consistently denied compassionate release when the defendant is fully vaccinated, even when other health conditions are present." United States v. Farmer, 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022); see United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Hald, 8 F.4th 932, 936 (10th Cir. 2021), cert. denied, 142 S. Ct. 2742 (2022) (noting that, where defendants "had either been vaccinated or been offered the opportunity to be vaccinated against COVID-19," there was "certainly room for doubt that [d]efendants' present circumstances would support a finding of 'extraordinary and compelling' reasons"). Additionally, as noted previously, FCI Danbury has vaccinated the vast majority of its inmates, has reported one inmate death, and has no active cases of COVID-19.

For the foregoing reasons, and based on a review of Defendant's Motion, his medical records, and the entire record, the Court concludes that Defendant's medical ailments in the context of COVID-19 do not "constitute[] the type of 'extreme hardship' that the compassionate-release statute is designed to ameliorate." Saccoccia, 10 F.4th at 4; see United States v. Figueroa, No. 04-CR-515-KAM, 2020 WL 6873433, at *3 (E.D.N.Y. Nov. 23, 2020) (concluding that defendant's "mild obesity" and hypertension during the pandemic were "insufficient to warrant a sentence modification"); United States v. Morel, No. 10-CR-798-PAC, 2021 WL 2821107, at *1 (S.D.N.Y.

---

[7] Defendant's medical records indicate that, in the days following his COVID-19 diagnosis, he remained in stable condition and denied any chest pain, gastrointestinal discomfort, loss of taste or smell, "or other complaints of acute discomfort." ECF No. 62-3, PageID #s 238-39, 241. He also showed "no signs or symptoms of acute respiratory distress or cardiovascular compromise." Id., PageID #s 238-39. After completing a ten-day isolation, he was asymptomatic and afebrile. Id., PageID # 237.

July 7, 2021) (determining that defendant's health conditions, which included hypertension and obesity, were not "extraordinary and compelling" because defendant was "fully vaccinated and FCI Danbury [had] zero active cases of COVID-19").

The Court also concludes that suboptimal conditions of confinement at FCI Danbury during the pandemic (such as the limited availability of classes and physical activity) do not constitute extraordinary or compelling reasons for compassionate release. See United States v. Soto, No. 2:17-CR-00157-JAW, 2022 WL 4465378, at *7 (D. Me. Sept. 26, 2022) (recognizing that COVID-19 impacted defendant's "access to education and work and that he and other inmates have spent a significant amount of time isolated" but concluding that these "impacts" did not constitute extraordinary or compelling reasons for release); Davidson, 2022 WL 484829, at *3 (concluding that substandard conditions of incarceration due to the pandemic, such as "no programming at all, no access to mental health, very limited medical care, long periods without any rec and extended periods of lockdown," were not extraordinary or compelling reasons to warrant release); Farmer, 2022 WL 47517, at *4 ("While the [c]ourt is sympathetic to the poor conditions many prisoners have faced during the pandemic, generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release."). Defendant's Motion therefore fails to advance any extraordinary or compelling reasons for his immediate release.[8]

---

[8] Although Defendant seeks a reduction in his sentence, his Motion also asserts that "two consecutive wardens [have refused] to meaningfully exercise the authority given to them by the Attorney General to place inmates into home confinement." ECF No. 58, PageID # 158. To the extent he seeks to complete the remainder of his sentence in home confinement should his request for a sentence reduction be denied, the Court cannot review BOP's decision to not place Defendant in home confinement in this posture. See Tapia v. United States, 564 U.S. 319, 330-31 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment' . . . . [D]ecisionmaking authority rests with the BOP." (citation omitted)); 18 U.S.C. § 3621(b) ("[A] designation of a place of imprisonment . . . is not reviewable by any court."). Furthermore, Defendant is not eligible for home detention until September 19, 2024. See ECF No. 58-3, PageID # 207.

8

Even assuming the Court were to find extraordinary and compelling reasons on the present record, the Court also must consider any applicable factors found in 18 U.S.C. § 3553(a). Critically, in exercising its discretion to grant any sentence reduction, the Court considers "the need . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Here, Defendant plead guilty to accessing with intent to view child pornography, a little less than a decade after he was convicted in 2017, in a Maine state court, of unlawful sexual contact with a 13-year-old girl. (PSR, ¶ 29.) In 2016, Defendant acknowledged that his "problem . . . never really went away" after his 1996 arrest. (Id., ¶ 8.) Considering that Defendant's proclivities did not wane during that nearly ten-year period, the Court finds no basis for concluding that he does not pose a danger to the public.[9]  "[A]ll Defendant requires to offend again is an Internet connection." Unites States v. Perri, No. CR 15-486, 2020 WL 6324384, at *3 (E.D. Pa. Oct. 28, 2020). Thus, while the Court acknowledges Defendant's rehabilitative efforts while incarcerated and his expressed desire to rejoin society as an upstanding citizen, on balance, the § 3553(a) factors do not support his release at this time.

In light of Defendant's failure to establish extraordinary and compelling circumstances, as well as the Court's consideration of the applicable § 3553(a) factors, Defendant's Motion (ECF No. 58) is hereby DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 13th day of October, 2022.

---

[9] The Court concludes as such despite the fact that the BOP has categorized him as a minimum risk of recidivism and of a low security level. See ECF No. 62-4, PageID # 243.